UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**TOMMY A.,**

**Plaintiff,**

**v.** **Civ. No. 25-641 GJF**

**FRANK BISIGNANO, Commissioner of the Social Security Administration,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, for review of the final decision of the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the applications for Disability Insurance Benefits and Supplemental Security Income filed by Plaintiff Tommy A. Pursuant to the Parties' consent, [Dkt. No. 12], the case was assigned to the undersigned Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The Court has reviewed *Plaintiff's Brief Pursuant to Fed. R. Civ. P., Title XIV, Rule 6* [Dkt. No. 14] along with Defendant's response [Doc. 20], and Plaintiff's reply [Dkt Nos. 21, 22]. After reviewing the Parties' briefing, the Administrative Record ("AR") (Dkt. No. 9 and attachments thereto), and applicable case law, this court will reverse the Commissioner's decision and remand the case to the Social Security Administration.

## I. BACKGROUND

On the date of the administrative law judge's ("ALJ's") decision, Plaintiff was a 46-year-old man with an eleventh-grade education and a GED. AR 31-32, 442. He reported past work as a

cook and convenience store manager. AR 442-43. In May 2018, Plaintiff underwent a right suboccipital craniotomy and a resection of acoustic neuroma. AR 1113. On March 17, 2021, Plaintiff filed his applications for both Supplemental Security Income and Disability Insurance Benefits. AR 368-72. He alleged that he became disabled beginning March 31, 2020, as a result of blind or low vision, depression, migraines, short term memory loss, weakness on the right side of his body, anxiety, and facial pain due to nerve damage. AR 163-64. The agency denied his claims both initially, AR 163-94, and after reconsideration. AR 195-230. On June 27, 2023, Plaintiff requested a hearing with an administrative law judge. AR 271-73.

On June 11, 2024, the ALJ held a telephonic hearing on Plaintiff's claims, AR 41-64. At the hearing, Plaintiff testified that since undergoing surgery, he gets severe migraines that require him to black out windows and lie down "a couple times a month," causing him to spend two to three days in bed. AR 49, 53-54. Plaintiff testified that bright lights and loud sounds trigger his migraines. AR 50. Plaintiff also stated that he suffered from weakness, fatigue, inability to pay attention, and memory issues, among other symptoms. AR 49-41, 55. A vocational expert also testified at the hearing. She stated that in her experience, if a hypothetical individual were consistently missing two days of work due to recurring migraines, it would preclude any employment. AR 62. On November 27, 2024, the ALJ issued his written decision denying benefits. AR 15-40. The Appeals Council declined Plaintiff's request to review the case. AR 1-7. Plaintiff then filed his Complaint [Dkt. No. 1] in this Court, which has jurisdiction under 42 U.S.C. § § 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). At the first step, the claimant must show that he is not "presently engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b) and 416.920(b). If so, at step two the claimant must demonstrate that he has a medically severe impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c) and 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. If the claimant satisfied step two, then at step three the ALJ must determine whether the impairment or combination of impairments is severe enough to both satisfy the criteria of a listed impairment and meets the duration requirement. If the claimant satisfies this step, he is disabled. If not, then the analysis proceeds to the fourth step.

Before considering step four, however, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e) and 416.920(e). Residual functional capacity is defined by Social Security Regulations as what a claimant is capable of doing despite his mental and physical limitations. *Davidson v. Sec. of Health & Human Servs.*, 912 F.2d 1246, 1253 (10th Cir. 1990). RFC categories depend on the physical demands of various kinds of work in the national economy. 20 C.F.R. §§ 404.1567, 416.967. RFC is an assessment based primarily on medical findings such as symptoms, signs, and laboratory results. Additionally, medical and non-medical

sources also must be considered in determining the RFC. 20 C.F.R. § § 404.1545(a), 416.945(a). When the ALJ is assessing the RFC, he "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

At step four, the claimant must show that "the impairment or combination of impairments prevents him from performing his past work." *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If he is unable to do any past relevant work or does not have any such work, the analysis proceeds to the fifth step.

As previously noted, the claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 750-51, 751 n.2. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5. To support a finding that an individual is not disabled at this step, the Social Security Administration must show that other work exists in significant numbers in the national economy that the claimant can do in light of his RFC, age, education, and work experience. If the claimant is able to do other work, he is not disabled.

**B. Substantial Evidence**

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review

in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported his findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases[.]" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show ... [she] has done so[.]" *Hamlin*, 365 F.3d at 1214.

The Commissioner's factual findings, on the other hand, are presumed conclusive so long as substantial evidence supports them. 42 U.S.C. § 405(g). Under this standard, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* at 103 (quotation omitted). On the other hand, substantial evidence is less than a preponderance. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 97, 103 (quotation omitted).

Under this substantial evidence standard, a court may not convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that

of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

## III. ALJ'S DECISION AND FINDINGS

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2025. He also concluded that Plaintiff has not engaged in substantial gainful activity since March 31, 2020, which is the alleged disability onset date. At step two, the ALJ found that Plaintiff has severe impairments to include "effects of right acoustic neuroma; chronic migraine headaches; injury to right trigeminal nerve; hypothyroidism; effects of central corneal opacity of the right eye; morbid obesity; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD." AR 21. He further stated that these medically determinable impairments significantly limit the ability to perform basic work activities. *Id*. At step three, however, the ALJ found that none of these impairments or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21. He stated that "[n]o treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment." *Id*. With respect to migraines specifically, the ALJ stated:

> Although there is no specific medical listing for headaches or migraines, the

> undersigned has considered the effects of this impairment on each body system included in the listings, including 11.02 (Epilepsy). The objective medical evidence in the record does not show that the claimant's migraines or headaches are of listing level severity, because they would not medically equal the criteria set forth under these listed impairments. Further, no treating or examining physician has reported clinical findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that were the same or equivalent to those of any listed impairment. Moreover, neither the claimant nor her representative cited evidence consistent with a finding that the severity of an alleged impairment would meet or medically equal a listed impairment in the Regulations.

AR 22.

Next, the ALJ considered Plaintiff's residual functional capacity ("RFC"). The ALJ found that (1) Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's symptoms, but (2) Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 25. The ALJ found, inter alia, that Plaintiff has the RFC to perform light work, except he can stand and/or walk for six hours and sit for six hours during an eight-hour workday. AR 23. He concluded that Plaintiff needs an indoor work environment with controlled lighting to limit his exposure to sunlight or bright lights and that he needs to avoid concentrated exposure to noise intensity level of no more than a "3" as defined in regulations. *Id*. The ALJ concluded that Plaintiff can understand, remember, and carry out only simple instructions and can maintain concentration for no longer than two-hour blocks. *Id*. He found that Plaintiff can occasionally interact with others, can use judgment to make only simple work-related decisions, and can tolerate only occasional changes in the work setting. *Id*. The ALJ stated that in making his RFC determination, he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . .

The undersigned also considered the medical opinion(s) and prior administrative medical finding(s)." AR 24.

At step four, the ALJ concluded that Plaintiff has no past relevant work. AR 31. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as cleaner, mail clerk, and office helper. AR 31-32. Accordingly, the ALJ concluded that Plaintiff has not been under a disability as defined in the SSA during the relevant period. AR 32.

## IV. PARTIES' CONTENTIONS

Plaintiff asserts that the ALJ failed to sufficiently address his subjective reports of symptoms as required under 20 C.F.R. §§ 404.1529 and 416.929. Dkt. No. 14 at 1. According to Plaintiff, the ALJ's RFC finding failed to include sufficient consideration of his need for protection from light and sound (which provoke his migraines) and failed to address the fact that he has severe migraines occurring two or three times per month. *Id*. According to Plaintiff, he testified that recovering from these severe migraines would require him to take time off work each month, which is a limitation that would preclude employment doing the work that the ALJ found he was capable of doing. *Id*.

In response, Defendant argues that the ALJ followed the proper legal standards, his reasoning is clear, and his findings are supported by substantial evidence. Defendant points to medical records showing objective findings, improvement of Plaintiff's symptoms with treatment, and the opinions of two expert state agency medical consultants and a consultative examiner who concluded that Plaintiff did not require the restrictions that Plaintiff requests. Defendant contends that the ALJ found that Plaintiff's subjective complaints, which were inconsistent with the medical and other evidence, were not an accurate reflection of his functional abilities. Defendant asserts

the Court should not reweigh the evidence.

## V. DISCUSSION

### A. Standard for Considering Plaintiff's Symptoms

In considering the "intensity, persistence, and limiting effects" of a claimant's symptoms, the ALJ must examine "the entire case record." Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304 at *4 (Oct. 25, 2017). For example, the ALJ should consider:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii) (2017). If the claimant's "statements about the intensity, persistence, and limiting effects" of his symptoms are consistent with the evidence of record, the ALJ will determine that the symptoms are "more likely to reduce his capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8. If they are not consistent, the ALJ will find that symptoms are "less likely to reduce his capacities to perform work-related activities." *Id*. Further,

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the

> evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304, at *10. A mere recitation of the factors is not adequate. *Id*. "The determination or decision must contain *specific reasons* for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. (emphasis added).

**B. ALJ's Findings**

With regard to Plaintiff and his symptoms, the ALJ stated: "After careful consideration of the all the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 25.

The symptoms Plaintiff placed at issue in this case are the intensity and duration of his severe migraines, which he states preclude work because recovery from those migraines would require him to take time off work each month. Dkt. No. 14 at 1. The ALJ mentioned Plaintiff's testimony about his symptoms, including daily headaches since undergoing brain surgery in May 2018 and severe migraine headaches at least two or three times per month that (1) last for a few hours at a time; (2) compel him to rest in a dark, quiet room; and (3) require most of a day to recover. AR 24. The ALJ also considered Plaintiff's descriptions of his dizziness, weakness, and shaking, as well as his tendency to develop a headache after being on his feet for more than three to four hours. *Id*. Also included in the ALJ's considerations were Plaintiff's poor memory, lack of

sensation on the right side of his face/head, feelings of anxiousness in public, inability to carry 20-25 pounds very far, lack of attention, feelings of paranoia, and low vision in the right eye. AR 24-25. Finally, the ALJ credited Plaintiff's testimony that bright lights and loud sounds trigger his migraines. AR 24.

The ALJ also discussed the medical evidence. The ALJ stated that, "[t]he record does not provide a basis for finding that the effects of the claimant's right acoustic neuroma including chronic headaches and migraines, injury of the right trigeminal nerve, decreased vision, and decreased hearing have caused greater limitations." AR 26. He noted that Plaintiff's imaging (MRIs) had shown no progression of his acoustic neuroma from September 2020 through September 2023, and that Plaintiff's treatment records demonstrate that his symptoms have not worsened during the relevant period. AR 26. In considering whether the intensity, frequency, and limiting effects of Plaintiff's symptoms are reasonably consistent with his treatment records with regard to Plaintiff's headaches specifically, the ALJ stated that "multiple chart notes . . . document his complaints of having headaches every other day and migraines every other week," AR 26, but he noted that the RFC "accommodates this by precluding bright lights and loud sounds, as well as by limiting the complexity of tasks, interaction with others, pace of work, and changes in the workplace." AR 26-27.

The ALJ did not discuss the credibility of Plaintiff's testimony regarding a particularly significant symptom—that his severe migraines would cause him to be absent from work for more than one day a couple of times per month. If the ALJ concluded that Plaintiff's testimony on this point was either not believable or inconsistent with the evidence such that the RFC did not need to accommodate it, he did not expressly say so. And if the ALJ did reach that conclusion, he did not state the reasons for doing so.

**C. Analysis**

With regard to his migraine symptoms, Plaintiff testified that he gets migraines two or three times per month, AR 53, and that when they are "really bad" it takes "a whole day" to recover, with Plaintiff feeling "pretty horrible" the following day. AR 54. Plaintiff testified that he spends at least two to three days each month in bed recovering from migraines, and "sometimes it's a lot more." *Id*.

Plaintiff argues that, when considering his RFC, the ALJ failed to follow the regulations and sufficiently address his subjective reports of prolonged headache symptoms, particularly his testimony at the hearing that he suffers from severe migraines occurring several times per month requiring extended recovery time. Dkt. No. 14 at 1. Plaintiff contends that the recovery time, in turn, would require the ALJ to determine whether Plaintiff needed time off from work each month. Plaintiff contends that the ALJ should have credited his testimony and then concluded that consistently missing two days of work each month would preclude employment. Plaintiff also argues that the ALJ's failure to explain why he rejected Plaintiff's symptoms was reversible error.

The Court agrees with the latter argument. The ALJ was free to find that Plaintiff's testimony about his symptoms was not credible or was unsupported by all the other record evidence. But the regulations require him not only to make that finding but also to explain *why* the evidence does not support Plaintiff's symptoms. As previously noted, the Social Security Administration requires an ALJ's decision to contain specific reasons for the weight given to the individual's symptoms, and those reasons must be clearly articulated so the claimant can assess how the adjudicator evaluated his symptoms. SSR 16-3p, 2017 WL 5180304, at *10. The ALJ failed to do that here with regard to the lasting effects of Plaintiff's severe migraines. Instead, the ALJ made a conclusory finding that Plaintiff's symptoms "are not entirely consistent with the

medical evidence." To be sure, the ALJ thoroughly catalogued the medical evidence. But what is missing here is his reasoning—an explanation of why and how he concluded that, in light of that evidence, Plaintiff did not need multiple days per month to recover from severe migraine headaches.

In its response, Defendant attempts to fill the gap in the ALJ's reasoning by supplying its own rationale. Defendant argues that the evidence in the record, including the neurological findings, brain MRIs, opinions of two state agency medical consultants, and the opinion of a consultative examiner constitute substantial evidence for a conclusion that Plaintiff does not require additional workplace restrictions, such as time off work. *Id*. Dkt. No. 20 at 6-7. Defendant further argues that "[a] reasonable fact finder could easily look at this medical record documenting normal objective findings and improvement with treatment, and this opinion evidence, and conclude that Plaintiff's migraines were well enough controlled to not require any additional workplace restrictions." *Id*. at 7. After listing certain medical records in which Plaintiff described a much less impactful history of headaches, Defendant argues, "In none of his visits with providers did Plaintiff describe the duration of his migraines or suggest that he had to lay down, close the curtains, and lose an entire day—a level of severity one would think would be reported to treatment providers." *Id*. at 8-9.

But the question is not whether a reasonable fact finder could reach the same conclusion as the ALJ. The problem here is that if the ALJ applied Defendant's reasoning regarding Plaintiff's alleged need for time to recover from severe migraines twice per month, he did not say so. The same is true of Defendant's argument that Plaintiff's past subjective complaints about the severity, frequency, and duration of his migraine headaches were inconsistent with his testimony at the

hearing. Dkt. No. 20 at 8-9. If those inconsistencies caused the ALJ to conclude that Plaintiff's testimony was not credible, the ALJ did not say as much.

The Court today has not reweighed the evidence. Nor does the Court express any opinion as to whether the ALJ's RFC determination is correct or supported by substantial evidence. The Court merely concludes that the ALJ did not adequately explain his reasons for rejecting Plaintiff's testimony regarding the prolonged physical effects that Plaintiff's severe migraines may have on him and his ability to work. The extent to which these symptoms affect Plaintiff's RFC—or any well-considered reasons that they do not—are critical in this case not only because the ALJ is required to apply the correct legal standards, but also because the vocational expert testified that if a hypothetical person of Plaintiff's age, education, and work experience were consistently missing two days of work due to recurring migraines, it would preclude employment. AR 62.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). *See also Sarabia v. Kijakazi*, 2023 WL2665555 at *5-6 (D.N.M. Mar. 28, 2023 (Fashing, J.) (reversing and remanding when ALJ rejected claimant's symptoms without adequate explanation or reasoning); *McKay v. Kijakazi*, 2022 WL 4598496 at *4-5 (D.N.M. Sept. 30, 2022) (Vidmar, J.) (same). Therefore, the Court will grant Plaintiff's motion to reverse and will remand the case to the Social Security Administration for further proceedings consistent with this opinion.

**IT IS ORDERED** that Plaintiff's motion to reverse and remand is **GRANTED**.

**UNITED STATES MAGISTRATE JUDGE**
***Presiding by Consent***